J-A14023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ALFIO J. RANOCCHIA AND JUNE RANOCCHIA, HIS WIFE | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| ERIE INSURANCE AND ERIE INSURANCE EXCHANGE AND ERIE INSURANCE GROUP AND ERIE INSURANCE COMPANY | |
| Appellees | No. 2166 MDA 2015 |

Appeal from the Order Entered November 25, 2015
In the Court of Common Pleas of Lackawanna County
Civil Division at No(s): 2014-CV-4555

BEFORE: BOWES, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY OTT, J.: **FILED AUGUST 19, 2016**

Alfio J. Ranocchia and his wife, June Ranocchia, (collectively, "Ranocchia"), appeal from the order entered on November 25, 2015, in the Lackawanna County Court of Common Pleas, granting summary judgment in favor of Erie Insurance, Erie Insurance Exchange, Erie Insurance Group, and Erie Insurance Company (collectively, "Erie Insurance"). For the reasons below, we affirm on the basis of the trial court opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case. **See** Trial Court Opinion, 11/25/2015, at 2. Therefore, we have no reason to restate them herein.

Ranocchia presents the following issue for our review:

> Whether the [t]rial [c]ourt erred in granting summary judgment in favor of [Erie Insurance] when the insurance policy at issue contained ambiguities requiring a determination that Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") applied to the policy and that, accordingly, underinsured motorist coverage was available to [Ranocchia.]

Ranocchia's Brief at 5 (some capitalization removed).

After a thorough review of the record, the briefs of the parties, the applicable law and standard of review,[1] and the well-reasoned opinion of the Honorable James A. Gibbons, we conclude Ranocchia's issue merits no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. **See** Trial Court Opinion, 2/6/2014, at 4-6 (finding:

_____

[1] We observe:

> We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

**Kozel v. Kozel,** 97 A.3d 767, 772 (Pa. Super. 2014), _quoting_ **Daley v. A.W. Chesterton, Inc.,** 37 A.3d 1175, 1179 (Pa. 2012).

(1) the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") does not apply to Ranocchia's personal catastrophe policy where (a) case law[2] has specifically stated that if a policy is an excess or umbrella policy, it is not subject to the requirements of the MVFRL, and (b) pursuant to the motor vehicle policy test as set forth in **Elec. Ins. Co. v. Rubin**, 32 F.3d 814 (3d Cir. 1994),[3] Ranocchia's catastrophe policy qualified as an excess policy, thereby making the MVFRL inapplicable to the action; and (2) the language of Ranocchia's policy was clear and unambiguous, in that it specifically stated, "It is agreed that the insurance does not apply to Underinsured Motorists Coverage."[4]   Furthermore, the court noted with respect to Ranocchia's claim that even though the policy included uninsured motorist coverage ("UM") and underinsured motorist ("UIM") rejection forms on the same page rather than on separate pages as required by the MVFRL at 75 Pa.C.S. § 1731(c)(1), the court "cannot apply law where it does not belong,"[5] and because the MVFRL did not apply to the catastrophe policy, Erie Insurance did not have a duty to obtain signed waivers of coverage

---

[2] **See i.e.**, **Been v. Empire Fire & Marine Ins. Co.**, 751 A.2d 238 (Pa. Super. 2000).

[3] **See also Kromer v. Reliance Ins. Co.**, 677 A.2d 1224 (Pa. Super. 1996).

[4] Ranocchia's Personal Catastrophe Policy, at 14; **see also** Trial Court Opinion, 11/25/2015, at 8.

[5] **Id.**

from Ranocchia. Lastly, the court found that the inclusion of the rejection forms, albeit inconsistent with the express language of the policy, did not create a consequential ambiguity.).[6] Accordingly, we conclude Ranocchia's sole claim fails and adopt the sound reasoning of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/19/2016

---

[6] It merits emphasis that the trial court correctly determined the MVFRL does not apply to the catastrophe policy. While Section 1731(c)(1) has specific technical requirements for the forms rejecting UM/UIM coverage, Ranocchia has provided no case law mandating that an excess policy, not subject to the MVFRL, must follow the same technical requirements. Accordingly, Ranocchia's signatures, specifically rejecting UM/UIM coverage under the excess policy, are fully operational. Therefore, Ranocchia's argument that the forms do not comply with Section 1731(c)(1) is unavailing.

| | | | |
|---|---|---|---|
| ALFIO J. RANOCCHIA and JUNE RANOCCHIA, his wife, | : | In the Court of Common Pleas of Lackawanna County | |
| Plaintiffs, | : : | | |
| v. | : : | Civil Division | |
| ERIE INSURANCE, ERIE INSURANCE EXCHANGE, ERIE INSURANCE GROUP, and ERIE INSURANCE COMPANY, | : : : : | | |
| Defendants. | : | No. 2014-CV-4555 | |

RECORDS CIVIL DIVISION CLERK OF JUDICIAL 2015 NOV 25 PM 12 55 MARY F. RINALDI LACKAWANNA COUNTY

## MEMORANDUM & ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GIBBONS, J.

### I. Introduction

Presently before us is the Defendants' Motion for Judgment on the Pleadings or, alternatively, Summary Judgment, which asks whether the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") applies to and provides underinsured motorist ("UIM") benefits under an excess insurance policy containing both an express exclusion of such benefits and legally deficient waivers of the benefits. In their motion, Defendants contend that our MVFRL simply does not apply to excess insurance policies. Even if the law does apply to this particular excess policy, they say, a provision of the policy expressly excluding UIM benefits prevents Plaintiffs from recovering. Conversely, Plaintiffs argue that the deficient waivers of UIM coverage provided by Defendants and included in the excess policy create an ambiguity thereby necessitating reformation of the policy and holding that UIM benefits were part of the excess policy until the waivers were secured. Because the waivers are invalid, they say, Plaintiffs are entitled to recover UIM benefits under the excess policy. While this precise issue has never been addressed by our appellate courts,

we are persuaded by existing case law regarding the MVFRL's inapplicability to excess insurance policies that Defendants are entitled to judgment as a matter of law.

## II. Factual Background

The undisputed facts are that on February 7, 2014, Plaintiff Alfio J. Ranocchia was involved in a head-on motor vehicle accident on State Route 307, Roaringbrook Township, Lackawanna County, Pennsylvania. (Pls.' Compl., ¶ 9, 05/15/14). He subsequently accepted $15,000, the tortfeasor's limits of liability insurance, and $300,000 in underinsured motorist coverage from his own insurer, Defendant Erie. (*Id.* at ¶¶ 15-18).

On March 24, 2014, Ranocchia made demand upon Erie for payment of additional UIM benefits under a separate, excess insurance policy called the Personal Catastrophe Policy. (*Id.* at ¶ 19). On May 2, 2014, Erie denied the claim. (*Id.* at ¶ 20). Despite Ranocchia's plea for reconsideration on June 27, 2014, Erie again rejected UIM coverage on July 8, 2014. (*Id.* at ¶¶ 21-22).

## III. Procedural History

On August 15, 2014, Ranocchia and his wife began this action against Erie advancing claims for declaratory judgment, breach of contract, and bad faith. (*See generally id.*). Erie filed its Answer and New Matter on October 10, 2014. Ranocchia then filed his Reply to New Matter on January 5, 2015. Ten days later, Erie filed the instant Motion for Judgment on the Pleadings or, alternatively, for Summary Judgment, and a Motion for a Stay of Ranocchia's bad faith claim pending the outcome of our decision. On August 4, 2015, Ranocchia filed a response. Oral argument was held on August 6, 2015, at which time we granted Erie's Motion to Stay the bad faith claim since Plaintiffs did not oppose same. With Erie's Motions for Judgment on the Pleadings and Summary Judgment now ripe for disposition, we turn to our standards of review.

## IV. Standard of Review

### 1. Judgment on the Pleadings

A motion for judgment on the pleadings is a "party's request that the court rule in its favor based on the pleadings on file, without accepting evidence, as when the outcome of the case rests on the court's interpretation of the law." *Black's Law Dictionary* 1038 (8th. ed. 2004). Pennsylvania Rule of Civil Procedure 1034 governs motions for judgment on the pleadings and provides, in relevant part, as follows:

> (a) After the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings.
>
> ...
>
> (b) The court shall enter such judgment or order as shall be proper on the pleadings.

Pa.R.C.P. 1034. "A motion for judgment on the pleadings is similar to a demurrer" such that it "may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Rourke v. Pa. Nat. Mus. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super. 2015) (quoting *Sw. Energy Prod. Co. v. Forest Res., LLC*, 83 A.3d 177, 185 (Pa. Super. 2013) (citation omitted), *appeal denied*, 96 A.2d 1029 (Pa. 2014)). In ruling on such a motion, we must confine our consideration "to the pleadings and relevant documents." *Id.* We must also "accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted." *Id.*

### 2. Summary Judgment

A motion for summary judgment is "[a] request that the court enter judgment without a trial because there is no genuine issue of material fact to be decided by a fact-finder—that is, because the evidence is legally insufficient to support a verdict in the nonmovant's favor." *Black's Law Dictionary* 1038 (8th ed. 2004). Pennsylvania Rule of Civil Procedure 1035 governs motions for summary judgment and provides, in relevant part, as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

    (1)   whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

    (2)   if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2. In ruling on a motion for summary judgment, the trial court must review "all the evidence of record to determine whether there exists a genuine issue of material fact." *Criswell v. Atlantic Richfield Co.*, 115 A.3d 906, 908-09 (Pa. Super. 2015) (quoting *Petrina v. Allied Glove Corp.*, 46 A.2d 795, 798 (Pa. Super. 2012) (citations omitted)). When doing so,

We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. All doubts as to the existence of a genuine issue of a material fact must be resolved against the moving party.

*Id.* at 909 (quoting *Petrina*, 46 A.2d at 798).

## V. Discussion

We address the issues before us in tandem: first, whether the MVFRL applies to Ranocchia's Personal Catastrophe Policy; and second, if it does, whether the written waivers of UIM coverage provided in the Personal Catastrophe Policy are legally deficient under the MVFRL such that Ranocchia is entitled to UIM coverage.

4

### 1. The MVFRL does not apply to Ranocchia's Personal Catastrophe Policy.

The parties appear to agree that the Personal Catastrophe Policy is an excess, or umbrella, policy.[1] As our Superior Court has written:

> Pennsylvania law recognizes that not all insurance policies that afford coverage for liability arising out of the operation or use of automobiles are considered motor vehicle liability policies. Specifically, if the policies are excess or umbrella policies, they are not subject to the requirements of the MVFRL. *Elec. Ins. Co. v. Rubin*, 32 F.3d 814 (3d Cir. 1994); *Kromer v. Reliance Ins. Co.*, 677 A.2d 1224 (Pa. Super. 1996).
>
> ...
>
> Generally, an excess policy is one that "provides for payment of that portion of the claim that remains unpaid once other [liability] coverage is exhausted." *Auto. Underwriters[, Inc.] v. Fireman's Fund Ins. Co.*, 874 F.2d 188, 193 (3d Cir. 1989). An umbrella policy is a type of excess policy.

*Been v. Empire Fire and Marine Ins. Co.*, 751 A.2d 238, 240-41 (Pa. Super. 2000) (quoting *Northern Ins. Co. of New York v. Dottery*, 43 F.Supp.2d 509, 514 (E.D.Pa. 1998) (citations modified)), *appeal denied*, 7764 A.2d 1063 (Pa. 2000). "[I]n determining whether a particular policy is a motor vehicle policy which "[was] issued to satisfy the MVFRL," *Rubin*, 32 F.3d at 818, courts should consider, *inter alia*, the following factors, where applicable:

1. Does the policy itself provide that it is an excess or umbrella policy?
2. Does the policy require the insured to carry underlying liability coverage?
3. Is the claim under consideration made by a first-party and not by a third-party injured in the accident?
4. Is the party making the claim not legally required to pay for the damages to the injured person?
5. Does the policy afford coverage to the insured in general rather than to a particular a vehicle?
6. Is the policy designed to insure a special risk?
7. Was there a premium charged for liability coverage, but not for UIM coverage?
8. Is the premium paid substantially lower than one which would provide for similar coverage under a primary automobile liability policy?
9. Is the amount of the coverage substantially higher than that afforded under a primary automobile insurance policy for the same risk?

---

[1] "Plaintiff is ... seeking an additional UIM recovery under the Personal Catastrophe Policy, an umbrella or excess liability insurance policy ...." Defs.' Br. in Supp., p. 2, 01/15/15. "The Declarations Page for the catastrophic loss policy indicates that it is in excess of the automobile liability policy held by Mr. and Mrs. Ranocchia with Erie." Pls.' Br. in Opp., p. 4, 08/04/15.

*Dottery*, 43 F.Supp.2d at 516-17. "On balance, if the answers to these questions are yes, then the policy is not a motor vehicle policy written to satisfy the MVFRL." *Id.* at 517. We have answered these questions as follows:

1. Yes. The Policy provides that Erie "will pay for only personal injury or property damage covered by this policy. This applies only to damages in excess of the underlying limit or Self-Insured Retention." Personal Catastrophe Policy, p. 4 (emphasis added); *see also id.* at p. 4, Limit of Liability.

2. Yes. "Subject to the maintenance of underlying insurance condition, you agree the underlying limits of insurance shown on the Declarations and/or Amended Declarations, which is part of this policy, are in force at inception of this policy and will be maintained as long as personal catastrophe liability coverage is provided." *Id.* at p. 1.

3. Yes, first-party Plaintiffs Alfio and June Ranocchia. *See id.* at p. 1.

4. Yes. Following his accident, Ranocchia accepted $15,000, the bodily injury limit, from the tortfeasor's insurance company, and $300,000 in underinsured motorist coverage from his own insurer, Defendant Erie. (Pls.' Compl., ¶¶ 15-18). *See Boyce v. St. Paul Fire and Marine Ins. Co.*, No. 92-6525, 1993 WL 175371 (E.D.Pa. May 25, 1993) ("[I]n an uninsured motorist accident, the party that is legally required to pay for damages is the uninsured motorist."), *reconsideration denied*, 1993 WL 229961 (E.D.Pa. June 25, 1993).

5. Yes. Unlike the Declarations of the Family Auto Insurance Policy, the Declarations of the Personal Catastrophe Policy provide no vehicles, and only list the names of the insured. *See* Declarations of Family Auto Ins. Policy, p. 1; Declarations of Personal Catastrophe Policy, p. 1.

6. Probably not, as the Policy provides general excess coverage rather than specialized coverage. *See Dottery*, 43 F.Supp.2d at 520 ("[T]he policy insures a special risk associated with Keystone employees driving customers' vehicles while the vehicles were garaged at the Keystone location."); *see also St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28 (Pa. Super. 1993) ("[T]he contracted coverage limitations in the antique automobile insurance policy are valid and enforceable.").

7. The full term premium for the Personal Catastrophe Policy is $148.00. It does not specify premiums charged for either liability coverage or UIM coverage. *See* Declarations of Personal Catastrophe Policy, p. 1; Declarations of Family Auto Ins. Policy, p. 1

8. Yes. While the premium under the Personal Catastrophe Policy is $148.00, the premium under the Family Auto Policy is $1,526. *See* Declarations of Personal Catastrophe Policy, p. 1; Declarations of Family Auto Ins. Policy, p. 1

9. Yes. The coverage for each occurrence under the Personal Catastrophe Policy is $1,000,000, which is substantially higher than any coverage

under the Family Auto Policy. *See* Declarations of Personal Catastrophe Policy, p. 1; Declarations of Family Auto Ins. Policy, p. 1.

Taken in the aggregate, we are initially convinced that the Ranocchias' Personal Catastrophe Policy is indeed an excess policy, thereby rendering the MVFRL inapplicable to this action. Without the MVFRL, the Ranocchias cannot produce evidence of facts essential to their cause of action. On these grounds alone, we must grant Erie's Motion for Summary Judgment.

### 2. The Ranocchias' Personal Catastrophe Policy is clear and unambiguous.

We write on, however, to address the gravamen of the Ranocchias' argument. Specifically, the Ranocchias ask us to hurdle this well-established axiom of the law—that the MVFRL is inapplicable to excess policies—and instead "read[ ] the policy as a whole, together with all attachments including rejection forms ..." Pls.' Br. in Opp., p. 5, 08/04/15. They argue:

> Attached to ... the Catastrophic Loss Policy produced by Erie ... are underinsured and uninsured motorist coverage Pennsylvania Catastrophe liability – Rejection Forms offered to and signed by Mr. and Mrs. Ranocchia. If Erie did not intend to provide underinsured motorist coverage under the catastrophic loss policy, such forms would not be required.

*Id.* The Ranocchias therefore conclude that "the intent of Erie was to provide underinsured motorist coverage under the personal catastrophe liability policy and to refuse coverage for the same only in the event that the insureds sign valid rejections." *Id.* at 6. Because "the rejection forms are invalid," Plaintiffs say, Erie "cannot defeat the claim of Mr. and Mrs. Ranocchia for underinsured motorist coverage." *Id.* We disagree.

"In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement." *Kromer*, 677 A.2d at 1230 (quoting *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)), *affirmed*, 696 A.2d 151 (Pa. 1997). "When the policy language is clear and unambiguous, we will give effect to the language of the contract." *Id.* (quoting *Paylor*, 640 A.2d at 1235).

Here, the language of the Personal Catastrophe Policy could not be any more clear or less ambiguous. Specifically, on page 14 of the agreement, unencumbered by any unrelated language, the Policy reads, "It is agreed that the insurance does not apply to Underinsured Motorists Coverage." Personal Catastrophe Policy, p. 14. Despite the language, the Ranocchias claim entitlement to UIM coverage because the Policy also included UIM and uninsured motorist coverage rejection forms on the same page rather than on separate pages, as required by the MVFRL at 75 Pa.C.S.A. § 1731(c)(1). As we have already explained, however, we cannot apply law where it does not belong. *Rubin*, 32 F.3d at 818-819 ("[N]o Pennsylvania court … has held that an excess policy is subject to the MVFRL."). Because the MVFRL does not apply to the Personal Catastrophe Policy, Erie "bore no duty to obtain signed waivers of coverage" from the Ranocchias. *See Stoumen v. Pub. Serv. Mut. Ins. Co.*, 834 F.Supp. 140, 142 (E.D.Pa. 1993) (denying the plaintiff's motion for summary judgment and predicting that the Pennsylvania Supreme Court would adopt the majority rule that "umbrella policies are not automobile insurance policies for purposes of § 1731"). Equally dispositive, we cannot "create … coverage where none exists." *Been*, 751 A.2d at 241 (citing *Blakney v. Gay*, 657 A.2d 1302, 1304 (Pa. Super. 1995), *appeal denied*, 668 A.2d 1119 (Pa. 1995)); *see also Swarner v. Mut. Ben. Gr.*, 72 A.3d 641, 645 (Pa. Super. 2013) ("[C]ourts must construe the terms of an insurance policy as written and may not modify the plain meaning of the words under the guise of 'interpreting' the policy. If the terms of a policy are clear, this Court cannot rewrite or give it a construction in conflict with the accepted and plain meaning of the language used.") (quoting *Allstate Fire and Cas. Ins. Co. v. Hymes*, 29 A.3d 1169, 1171 (Pa. Super. 2011)), *appeal denied*, 85 A.3d 484 (Pa. 2014).

The inclusion of the rejections forms, albeit inconsistent with the express language of the Policy, does not, in our view, create a consequential ambiguity. We conclude, therefore, that Erie's Motion for Summary Judgment is well founded. An appropriate Order follows.

| | | |
|---|---|---|
| ALFIO J. RANOCCHIA and JUNE RANOCCHIA, his wife, | : | In the Court of Common Pleas of Lackawanna County |
| Plaintiffs, | : | |
| v. | : | Civil Division |
| ERIE INSURANCE, ERIE INSURANCE EXCHANGE, ERIE INSURANCE GROUP, and ERIE INSURANCE COMPANY, | : | |
| Defendants. | : | No. 2014-CV-4555 |

2015 NOV 25 PM 12 55
MARY F. RINALDI
LACKAWANNA COUNTY
CLERK OF JUDICIAL RECORDS CIVIL DIVISION

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW, this 25th of November, 2015, upon consideration of the Motion for Judgment on the Pleadings and Motion for Summary Judgment filed by Defendants on January 15, 2015, Plaintiffs' Answer filed on August 4, 2015, briefs filed by the parties, and oral argument on August 6, 2015, it is hereby ORDERED that Defendants' Motion for Summary Judgment is GRANTED, and that Judgment be entered in favor of the Defendants.

BY THE COURT

_____, J.

James A. Gibbons

cc:  *Written notice of the entry of the foregoing Order has been provided to each party pursuant to Pa.R.C.P. 236(a) and (d) by e-mailing time-stamped copies to:*

For Plaintiff:  James J. Conaboy, Esq., jconaboy@law-aca.com

For Defendant:  Daniel E. Cummins, Esq., dancummins@comcast.net

9