626 A.2d 1177

**Luis M. SANTOS and Frances Santos, His Wife, Appellants,**

v.

**INSURANCE PLACEMENT FACILITY
OF PENNSYLVANIA, Appellee.**

Superior Court of Pennsylvania.

Argued Dec. 10, 1992.

Filed May 20, 1993.

Reargument Denied July 16, 1993.

Harry P. Begier, Jr., Philadelphia, for appellants.

Christopher Leise, Philadelphia, for appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

CAVANAUGH, Judge.

This is an appeal from the entry of summary judgment in favor of the Insurance Placement Facility of Pennsylvania (Fair Plan.)[1]  Judgment in favor of the Fair Plan was ordered

1.  Pursuant to 40 P.S. § 1600.101 *et seq.,* the Fair Plan was created in 1968 to make available basic property insurance against fire and other perils, in part, in order to encourage improvement in urban areas.  40 P.S. § 1600.102(3).  The Fair Plan's purpose is to assure fair access to insurance requirements in order that no property shall be denied basic

because the lower court concluded that appellants-Santos had not complied with a condition of the fire insurance policy between themselves and Fair Plan. On appeal, Santos argue that the condition, i.e., appraisal of disputed amounts of loss, may not be asserted by Fair Plan because it breached its duty of fair dealing by reason of delay in handling Santos' claim. We find no error by the lower court and affirm.

The Fair Plan had issued a fire insurance policy to Santos for their residence and contents in an aggregate amount of $62,000. Included in the policy were the following clauses:

**Appraisal.** In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

**Suit.** No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity *unless all the requirements of this policy shall have been complied with,* and unless commenced within twelve months next after inception of the loss.[2]

On April 26, 1991, the Santos' property suffered a fire which damaged the dwelling and its contents. Notice of the fire was

property insurance except on the basis of individual underwriting characteristics. 40 P.S. § 1600.102(4); 31 Pa.Code § 111.1.

2. These policy terms are mandated by statute at 40 P.S. § 636.

sent to Fair Plan on or about April 29, 1991 and an adjuster for Fair Plan, Herbert Bailey, inspected the premises on May 3, 1991. The proof of loss submitted by Santos was received on May 31, 1991 by Fair Plan. Fair Plan acknowledged receipt of the notice of proof of loss on June 14, 1991 and informed Santos that it did not accept the amount of loss claimed by Santos, $48,972.

In July and August, Fair Plan, through Mr. Bailey, offered to settle the claim in full for $22,173.49. This was not accepted by Santos. Suit was begun on September 16, 1991. After commencement of suit, Fair Plan issued a check for $20,518.54 on October 16, 1991. This check was accepted by Santos and they reduced their demand for damages to $26,953.46. Santos then sought to preclude Fair Plan from disputing the remainder of the claim for its failure to timely respond to Santos' proof of loss with a counter-amount. The court denied Santos' motion for summary judgment on March 3, 1992.[3] It granted Fair Plan's motion for summary judgment and dismissed the complaint on June 17, 1992. This appeal has been taken from the order of June 17, 1992.

The supreme court has recently articulated the principles regarding entry of summary judgment:

Summary judgment shall be entered:

... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Pa.R.C.P. 1035(b). "The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 527 Pa. 132, [135], 589 A.2d 205, 206 (1991). Summary judgment may be entered only in cases where the right is clear and free from doubt. *Musser v.*

---

**3.** No appeal was taken from the March 3d order denying Santos' motion for summary judgment. The only order before us for review is the order granting Fair Plan's motion for summary judgment.

*Vilsmeier Auction Co., Inc.,* 522 Pa. 367, 369, 562 A.2d 279, 280 (1989).

*Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 324, 608 A.2d 1040, 1042 (1992).

The lower court, the Honorable John W. Herron, granted Fair Plan summary judgment because the requirement in the insurance policy that disputes as to amount of loss be submitted to appraisal had not been satisfied. Judge Herron found that the suit was "intemperately" brought since the appraisal requirement had been violated.

On appeal, Santos argue, as they had before Judge Herron, that they do not have an obligation to submit the claim to appraisal. They contend that Fair Plan has lost the benefit of the appraisal clause because it breached the policy. The claims of breach are based on the alleged incorporation into the policy of the terms of the Unfair Insurance Practices Act, 40 P.S. § 1171.1 *et seq.* (UIPA), and the regulations issued under it, 31 Pa.Code § 146.1 *et seq..* The argument is that failure to follow the time-frame set out in the regulations issued by the insurance commissioner under UIPA, is a failure to use the "utmost fair dealing", and, therefore, the appraisal clause is unenforceable by Fair Plan. After review of the record and briefs and after thorough analysis of the law, we find appellants' arguments to be without merit.

There is no question that the insurance policy calls for appraisal where either party demands it. Fair Plan has demanded appraisal. Appellants seek to avoid application of the contractual term on the basis that Fair Plan has forfeited the right to compel appraisal and the right to contest the amount demanded by Santos, i.e., $26,953.46. Relying upon caselaw which has held that clauses which limit an insured's ability to bring suit are unenforceable where the insurer did not act with utmost fair dealing, Santos argue that Fair Plan's non-compliance with the aforementioned regulations amounts to unfair dealing. *See Fedas v. Insurance Company of State of Pennsylvania,* 300 Pa. 555, 151 A. 285 (1930) and *Diamon v. Penn Mutual Fire Insurance Company,* 247 Pa.Super. 534,

372 A.2d 1218 (1977). Fair Plan counters that because there is no private right of action under the Unfair Insurance Practices Act, *see D'Ambrosio v. Penna. Nat'l Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), Santos may not rely upon it to make out a breach of the policy by Fair Plan. The lower court did not discuss this issue in its opinion, but rather, applied the contractual provision that an appraisal be conducted before suit could be commenced.

■ We agree with Santos that pertinent statutory provisions of Pennsylvania insurance law are deemed incorporated into insurance policies. *Neel v. Williams*, 158 Pa.Super. 478, 45 A.2d 375 (1945); *Clairton City School District v. Mary*, 116 Pa.Cmwlth. 376, 541 A.2d 849 (1988).[4] The substantive laws in effect when the parties enter into a contract are implicitly incorporated into it. *First National Bank of Pennsylvania v. Flanagan*, 515 Pa. 263, 270, 528 A.2d 134, 137 (1987) (mortgage law). However, none of these cases specifically provides that regulations issued pursuant to a statute are within the terms of the insurance policy. Nor has this court's research discovered any jurisdiction which has held that regulations promulgated pursuant to a version of the model unfair practices legislation are incorporated into property, fire and casualty insurance policies. Santos have failed to carry their burden to establish that the law requires that regulations, like the terms of an insurance statute itself, are incorporated into the policy of insurance.

■ The lack of authority addressing the issue of the incorporation of regulations into an insurance contract convinces us that to hold that the regulations are incorporated in the policy would be unwise. The insurance industry is highly regulated by both statutes passed by the legislature and regulations promulgated by the insurance commissioner. As

4. Appellant also cites *A & E Supply Company, Inc. v. Nationwide Mutual Fire Insurance Company*, 798 F.2d 669 (4th Cir.1986) where the United States Court of Appeals for the Fourth Circuit, applying Virginia law, found that its Uniform Insurance Practices Act (which is substantially similar to that of Pennsylvania) was incorporated into a fire insurance contract.

is evident in the instant case, the legislature has mandated that all policies of certain types of insurance contain designated provisions. Where a policy complies with all aspects of the statutory mandate, we do not believe that regulations adopted pursuant to the UIPA may be the basis for a judicially created expansion of an insured's ability to abrogate portions of the policy.

The timing of payment of a loss is fixed by 40 P.S. § 636 as follows:

> The amount of loss for which this Company may be liable shall be payable sixty days after proof of loss, as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided.

In accordance with this requirement, the policy provided for loss payment:

> We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:
>
> a. reach agreement with you; or
>
> b. there is an entry of a final judgment; or
>
> c. there is a filing of an appraisal award with us.

■ Santos admit that Fair Plan made the offer to settle within 54 days of receipt of proof of loss. They argue, however, that it would not be possible to reach agreement within 60 days. We do not accept their position that it would be unreasonable for Fair Plan's offer to be acted upon by them within the 60–day period specified by the policy and statute. The insureds had adequate opportunity to accept or reject the offer by Fair Plan. Fair Plan did not prevent Santos from taking advantage of one of the ways by which payment of loss would be required.

Santos never sought to invoke the appraisal process. Instead, they filed suit one month after the second offer from

Fair Plan seeking to preclude Fair Plan from exercising its contractual right to appraisal. The terms of the policy may not be so easily nullified by appellants. Nothing within the Unfair Insurance Practices Act itself would require a finding that Fair Plan acted with such a lack of promptness that it breached its duty of utmost fair dealing. Rather, we find that Fair Plan was in compliance with the terms of the policy and all relevant statutory provisions pertaining to its relationship with the insureds.

We affirm the judgment of the lower court that appraisal is the proper avenue for determining the amount of loss.

Judgment affirmed.

BECK, J., concurs in the result.